**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**


RONALD R. GRAHAM,

     *Plaintiff*,

*v*.                        CASE NO. 08-CV-14527

COMMISSIONER OF            DISTRICT JUDGE JOHN CORBETT O'MEARA
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant*.

_____/


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]


## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II.   **REPORT**

### A.    **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for disability benefits.

Plaintiff was 40 years of age at the time of the most recent administrative hearing and has completed the eleventh grade. (Tr. at 19, 66.)[2] Plaintiff's relevant work history includes seventeen years' work as a production welder. (Tr. at 126.)

Plaintiff filed the instant claim on March 26, 2007, alleging that he became unable to work on February 27, 1997. (Tr. at 91-93.) The claim was denied initially and upon reconsideration. (Tr. at 68-72.) In denying Plaintiff's claim, the Defendant Commissioner considered cardiomyopathy, congestive heart failure, anxiety and depression as possible bases of disability. (*Id.*)

On May 13, 2008, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Paul Armstrong, who considered the case *de novo*. In a decision dated June 6, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 60-67.) Plaintiff requested a review of this decision on August 5, 2008. (Tr. at 59.)

The ALJ's decision became the final decision of the Commissioner when, on May 18, 2000, (Tr. at 1-2), the Appeals Council denied Plaintiff's request for review. Plaintiff filed the instant case seeking review of this unfavorable decision October 24, 2008.

---

[2]The transcript page numbers appear at the bottom right of each page, and have been truncated in the printed transcript. The page numbers appear intact in the electronic version of the transcript. (*See* Docs. 13-17).

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with

3

observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994).  *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*.  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

5

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540).  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that, in May 2005, Plaintiff was examined by Dr. Ramesh Reddy, M.D. (Tr. at 155-156.) In a letter to Plaintiff's family physician, Dr. Reddy stated that Plaintiff suffered from dilated cardiomyopathy and had an ejection fraction of less than 30%. (Tr. at 155, 173, 176.) The doctor felt that Plaintiff was a candidate for an internal cardiac defibrillator, however, the doctor believed that Plaintiff's treatment first needed to be optimized, and he made suggestions as to appropriate medications. Dr. Reddy saw Plaintiff again in November 2005. In a letter to Plaintiff's family physician, the doctor stated that a repeat echocardiogram had been performed which revealed an improvement in left ventricle ejection fraction to 30-35% which the doctor characterized as "slightly better." (Tr. at 154, 169, 172, 192.) The doctor went on to state that Plaintiff's "functional capacity is however good and has improved." (*Id.*) In May 2006, Dr. Reddy reported that although Plaintiff continued to suffer from cardiomyopathy, his "functional capacity has been excellent." (Tr. at 153.) The doctor made further suggestions as to medications. In September 2006, Dr. Reddy repeated his suggestion that Plaintiff was a candidate for an internal cardiac defibrillator, but that additional preparation was necessary. (Tr. at 152.)

In mid-January 2007, Dr. Reddy again wrote to Plaintiff's treating physician discussing the relative merits of various types of cardiac pacemakers. (Tr. at 150.) The doctor noted that Plaintiff's "functional capacity is excellent and this itself puts him in a good risk category [.]" (*Id.*) In late January 2007, Dr. Reddy performed a physical examination of the Plaintiff. The doctor noted that Plaintiff's cardiac ejection fraction had improved over the last year and a half of medical

therapy. (Tr. at 148-49.) A 24-hour Holter monitor showed abnormalities which were asymptomatic. (*Id.*) The doctor noted that Plaintiff has had no episodes of fainting in the last 18 months. (*Id.*) The doctor rated Plaintiff's symptoms as Class II, as described by the New York Heart Association. (Tr. at 149, 317.) In an accompanying letter, the doctor suggested that Plaintiff was ready for the implantation of the peacemaker. (Tr. at 147.) The defibrillator was implanted in late February 2007. (Tr. at 162, 217, 294, 353.) A repeat echocardiogram study was conducted by Dr. Reddy in mid-December 2007. (Tr. at 359.) Ejection fraction was measured at 35%. The doctor found "no significant change" from a previous study. (*Id.*)

In a March 31, 2008, "it may concern" letter, written approximately 6 weeks before in the history of hearing, Dr. Reddy described his treatment of the Plaintiff in the implantation of the defibrillator. (Tr. at 361.) The doctor concluded his letter by stating, "Given all this I believe he should be considered seriously for full disability. Perhaps the only occupation that he can perform would be desk right work but he certainly cannot return to his employment as a welder." (*Id.*)

In a "Function Report" submitted by Plaintiff to the Commissioner, he stated that he took his six-year-old son to school daily, helped his son with homework, assisted with laundry, took care of the family pet, and cooked simple meals when his wife was working. (Tr. at 116-18.) Plaintiff reported that he watched TV daily, went fishing near his home and played cards with friends once or twice a month. (Tr. at 119-20.) Plaintiff also stated that he took his son to sports activities on a weekly basis. (Tr. at 120.)

At the administrative hearing, Dr. Walter Miller testified as a Medical Expert. He testified that cardiomyopathy with an ejection fraction of 35% would put a person in the sedentary residual functional capacity classification. (Tr. at 43.) The doctor testified that Dr. Reddy had classified Plaintiff as suffering from mild digestive heart failure. (*Id.*) A Vocational Expert (VE) also

testified.  He characterized Plaintiff's prior work as a welder to be medium to heavy in exertion and skilled.  (Tr. at 51.)  In response to a hypothetical question presuming a person of Plaintiff's circumstances who is limited to sedentary work which involves no climbing, no exposure to high voltage or magnetic fields and only the occasional use of stairs, the VE identified 2,100 assembler jobs, 1,100 general office jobs and 400 order clerk jobs consistent with these hypothetical conditions.  (Tr. at 52.)

### E.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since February 27, 2007. (Tr. at 62.)  At step two, the ALJ found that Plaintiff's cardiomyopathy and congestive heart failure were "severe" within the meaning of the second sequential step.  (*Id.*)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Tr. at 63.)  At step four, the ALJ found that Plaintiff could not perform his previous work as a production welder.  (Tr. at 66.)  At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy.  (Tr. at 66-67.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of sedentary work.  (Tr. at 63-64, 66-67.)

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  Social Security Ruling 83-10 clarifies this definition, explaining that:

> "Occasionally" means occurring from very little up to one-third of the time.  Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.  Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

S.S.R. 83-10, 1983 WL 31251, at *5 (1982).

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner.  As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff's primary contention revolves around the argument that the ALJ impermissibly failed to accord full credibility to the Plaintiff's testimony of disabling impairments.  In his Decision, the ALJ acknowledged that Plaintiff had an impairment that could cause limitations; however, he found that the severe and debilitating nature of Plaintiff's alleged limitations were not fully credible and provided reasons for this conclusion.  The issue thus becomes whether the ALJ's credibility determinations are supported by substantial evidence.  When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses.  *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues

of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at \*\*3 (6th Cir. Ohio Feb. 11, 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Under this standard, and for the reasons which follow, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

While clearly impacted by cardiomyopathy, on more than one occasion Dr. Reddy found Plaintiff's functional capacity was "good and improved" or "excellent." (Tr. at 150, 153, 154.) A repeat echocardiogram similarly showed improvement. (Tr. at 169, 172, 192.) Holter monitoring showed only asymptomatic abnormalities. (Tr. at 148-149.) A later echocardiogram showed no significant changes. (Tr. at 359.) Plaintiff's symptoms were rated at Class II, which the Medical Expert characterized as "mild congestive heart failure." (Tr. at 43.) Counsel for Plaintiff argues that the ALJ impermissibly rejected the opinions expressed by Dr. Reddy in his "to whom it may concern" letter authored shortly before the administrative hearing. I suggest the opposite; namely, that the ALJ's findings track both the opinions of Dr. Reddy expressed in that letter (Tr. at 361,) as well opinions of the Medical Expert. (Tr. at 43.) As did each of these physicians, the ALJ found that Plaintiff could not return to any form of his prior work, but could undertake a range of sedentary exertion work activities.

As to Plaintiff's claims of disabling mental impairments, the evidence in this case, particularly that from Plaintiff's "Function Report" (Tr. at 116-23) falls considerably short of that found sufficient in this circuit to uphold a finding of disability. *See Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991) (claimant experienced "continuing and unrelenting episodes of violent and suicidal behavior, chronic anxiety and abnormal dependency with an inability to handle stress").

I suggest, instead, that the administrative record in this case is much more consistent with those cases in this circuit finding that allegations of disabling mental impairments failed to justify the award of benefits.  *See Hogg v. Sullivan*, 987 F.2d 328 (6th Cir. 1992); *Foster v. Bowen*, 853 F.2d 483 (6th Cir. 1988).

I further suggest that the ALJ's findings also follow the opinions of the vocational expert which came in response to appropriate hypothetical questions that accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians, the daily activities described by Plaintiff in his "Function Report," and the testimony of the Medical Examiner. (*See* Tr. at 43, 51-52.)  *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections

a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier*

*Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is

to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue

contained within the objections.

s/ Charles E Binder

CHARLES E. BINDER

United States Magistrate Judge

Dated: October 1, 2009

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  October 1, 2009                                    By          s/Patricia T. Morris
                                                         Law Clerk to Magistrate Judge Binder